IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COOKEVILLE DIVISION

| | |
|---|---|
| JANET E. DICKERT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 2:04-0107 |
| ) | JUDGE HAYNES |
| ) | |
| ANSEI AMERICA, INC., ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM

Plaintiff, Janet E. Dickert, filed this action against the Defendant, Ansei American, Inc., her former employer, alleging the Defendant's violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. Plaintiff asserted other claims, but those claims were voluntarily dismissed. (Docket Entry No. 20). The parties proceeded with discovery.

Before the Court is the Defendant's motion for summary judgment (Docket Entry No. 21) contending, in sum, that Plaintiff cannot make a prima facie showing of an ADEA violation and alternatively that Plaintiff's proof does not show that the Defendant's stated reason for her demotion and termination were not for valid non-discriminatory reasons for each adverse employment action or that those decisions were actually motivated by Plaintiff's age.

In her response, Plaintiff cites the age-related comments of the Defendant's managers and their failure to follow the company's disciplinary policy as giving rise to material factual disputes on the Defendant's actual motivation to demote and later, to terminate her. See Docket Entry No. 29. Plaintiff also filed a statement of undisputed facts to which the Defendant has responded. (Docket Entry No. 35).

## A. FINDINGS OF FACTS[1]

Ansei manufactures door latches for Mitsubishi Motors Company and employs approximately twenty-five full time employees. (Docket Entry No. 22, Exhibit 4, Huff Deposition at 34). The Defendant's plant managers are Koji Ishii, president, Nobutaka Uemura, secretary, and Yoichi Nakashima, Plant Manager. Id. There are three supervisors at the plant. Tammie Huff, Mary Baldwin and Danny Bryant, a quality control supervisor. Id.

In June 2002, Ansei hired Dickert who was 47 years old on the date of her hiring. (Docket Entry No. 30, Plaintiff's Response to Defendant Statement of Undisputed Facts at ¶¶ 1 and 2). Ishii actually interviewed and selected Dickert. Id. at ¶ 3. Dickert's job duties were in general affairs, involving accounting and purchasing. Id. Plaintiff initially reported directly to Uemura. Id. at ¶ 5.

In October 2003, Ansei's management designated a supervisor for the purchase of office supplies. Id. at ¶ 6. Prior to that time, Dickert did not have a supervisor. Id. at ¶ 7. Ansei divided the ordering and remittance duties to lower the risk of any improprieties. Id. at ¶¶ 6 and 7. Ansei later assigned the supervisor to perform and manage purchasing functions and to resolve any conflicts. Id. at ¶ 8. Ansei assigned one of the three existing supervisors for this

---

[1] Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986) app. 840 F.2d 16 (6th Cir. 1988) (unpublished opinion). As will be discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Based upon the parties' responses' to the respective statement of undisputed facts (Docket Entry Nos. 30 and 35), the Court concludes that there are not any material factual disputes. Thus, this section constitutes findings of fact under Fed. R. Civ. P. 56(d).s

task. Id. at ¶10.[2]

Of the three existing supervisors, Ansei's managers selected Huff, given her purchasing experience. Id. at ¶10. On October 23, 2003, purchasing duties were added to Huff's prior duties as human resources supervisor, without any increase in pay. Id. Dickert continued to research and recommend products for purchase, but made her recommendations to Huff, not Uemura. Id. at ¶¶ 9, 10 and 11. Dickert's wages were not affected by this reassignment. Id. at ¶12.

In the fall of 2003, Dickert's duty was to collect, review and audit certain accounting records for a sales report to its parent company. (Docket Entry No. 22, Huff Deposition at p. 36). Dickert, however, failed to perform these tasks adequately, and Uemura had to prepare that report. (Docket Entry No. 22, Exhibit 2, Uemura Affidavit at ¶ 7). When Dickert failed to enter data correctly, Uemura had to correct her mistakes. Id. On one occasion, Plaintiff completed a report and left on vacation when an important report was due, but her report had mistakes requiring Uemura to complete the report in her absence. Id.

In the fall and winter of 2003, Ishii and Uemura became increasingly dissatisfied with Dickert's performance of her accounting duties, citing her inaccuracies, imperfections, failure to explain reasons for imperfections, lack of attention and failure to complete tasks. (Docket Entry No. 22, Exhibit 1, Ishii Affidavit at ¶¶ 4-18; and Docket Entry No. 22, Exhibit 2, Uemura Affidavit at ¶¶ 2-8). The Defendant considers the preparation of delivery reports as important because these reports determined payments from their customers. (Docket Entry No. 22,

---

[2]Dickert voluntarily dismissed any failure to promote claim regarding the purchasing supervisor position.

Exhibit1, Ishii Affidavit at ¶ 3). In December, Ishii found a mistake on the November delivery report and reviewed the previous month to determine when the error occurred. Id. at ¶ 4. Upon review, more errors were found in that report and Dickert was questioned about the differences and quantity of errors. Id. at ¶ 5. Dickert could not explain the errors. Id. at ¶ 5. Ishii asked Dickert to investigate these discrepancies immediately and after a few days, Dickert responded that the computer "messed up". Id. at ¶7. When asked if she verifies her work, Dickert responded "no". Id. Ishii then complied Dickert's mistakes that reflected data entry mistakes in each month from April, 2003 through November 2003. Id. at ¶¶ 8, 9-16.

On January 9, 2004, after a meeting with her, Dickert was offered her a job in the production control department, performing data input and shipping preparation. Uemura initially assumed Dickert's accounting duties (Docket Entry No.22, Exhibit 2, Uemura Affidavit at ¶ 9). Dickert notes that Janine Key who is in her thirties assumed her duties in accounting. (Docket Entry No. 22, Exhibit 5, Huff Deposition at p. 54 and Docket Entry No. 22, Exhibit 3-A, Dickert Deposition at p. 136). Huff explained that Key performed some of those duties for a week. (Docket Entry No. 22, Exhibit 5, Huff Deposition at pp. 54-57). Dickert retained her delivery file responsibilities, but her work was monitored by Baldwin, a supervisor. (Docket Entry No. 35, Defendant's Response to Plaintiff's Statement of Undisputed Facts at ¶ 4). For this change, Dickert became a wage employee and was paid less. (Docket Entry No. 35, Defendant's Response to Plaintiff's Statement of Undisputed Facts at ¶ 2).

After this meeting, Dickert did not report to work for ten days. (Docket Entry No. 22, Exhibit 1, Ishii Affidavit at ¶19). Despite her unexcused absence, Ansei management did not terminate her, despite its termination of other employees for excused attendance. Id.

4

On March 17, 2004, Mr. Bryant, a quality supervisor, asked Ishii about a rumor that he was going to be fired, and Ishii replied that it was only a rumor and that people should not spread rumors. (Docket Entry No. 22, Exhibit1, Ishii Affidavit at ¶21). On the following morning, March 18, 2004, Bryant told all employees that employees should not spread rumors or make statements that upset employee morale. Id.

On Friday, March 19, 2004, Tammy Bryant, a line leader for certain production lines, reported to Baldwin, her supervisor, that Dickert and Delisa Spivey, another employee, were spreading rumors and disclosing confidential company information. (Docket Entry No. 22, Exhibit 5, Huff Deposition at p. 64). Baldwin reported Bryant's statement to Ishii and Uemura, who instructed Baldwin and Huff, the human resources supervisor, to investigate this report. Id. at p. 65. From Friday, March 19, 2004 to Monday, March 22, 2004, Huff and Baldwin, interviewed and obtained statements from Bryant, a production line leader, Penny Farmer, a production line leader and Steve Barlow, a quality control employee. (Docket Entry No. 22, Exhibit 5, Huff Deposition at p. 63-76).

These individuals disclosed that Dickert disseminated confidential information and spread untrue gossip and rumors that reduced employee morale. Each individual signed statements that described Dickert as:

- warning employees about a pending random drug screen one or two weeks before management advised the work force about the drug test. (Docket Entry No. 37, Statement thereto Dickert Deposition, Exhibit 8 and 9 thereto);

- disclosing the salaries of Supervisors, Baldwin and Bryant, to non-management employees. Id. at Exhibit 9;

- advising a non-management employee, Steve Barlow, that he was being "watched" by management, about to be fired and was viewed as being a "troublemaker." Id.;

5

- telling Penny Farmer, shortly after she was hired, that the supervisors did not want her to be a supervisor. Id. at Exhibit 8;

- telling Penny Farmer that the other line leaders earned greater wages than she did. Id. at Exhibit 8;

- telling employees that Bryant was going to be fired. Id. at Exhibit 9; and

- telling employees that they would never advance, and that the current supervisors would make sure that they would not advance. Id.

These statements revealed similar conduct by Spivey. Id. at Exhibit 9.

After this report, Ishii and Uemura terminated Dickert and Spivey for disclosing confidential information, disrupting the workplace, and adversely affecting employee morale. (Docket Entry No. 22, Exhibit 5, Huff Deposition at pp. 67-68, Docket Entry No. 37, Attachment thereto Dickert Deposition at Exhibit 7). The company handbook requires employees not to disclose confidential information, including the results of drug test, supervisors's salaries and line leader wages. The company handbook authorizes termination for a first offense. After her termination, Dickert duties were assumed by the other employees. (Docket Entry No. 22, Exhibit 5 Huff Deposition at pp. 68-69).

Ansei's policies include equal opportunity employment and non-discrimination policies for its employees. These policies prohibit employment discrimination, including, age discrimination. Ishii Affidavit at ¶ 20. The policies are reflected in the employees handbook. (Docket Entry No. 37, Dickert Deposition at Exhibit 5), provided to Dickert and all employees. Id. at Exhibit 4. Ansei's human resources and management personnel assists within the education, and enforcement of such policies.

Dickert notes that the Defendant's employee handbook also has a multiple step disciplinary policy that was not followed as to her. (See Docket Entry No. 35, Defendant's

Response to Plaintiff's Statement of Undisputed Facts at ¶¶9 through 16). The Defendant responds that this handbook authorizes immediate termination for "Use or disclosure of Company information." Id.

### B. CONCLUSIONS OF LAW

"The very reason of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the opposing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Accord, Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment `shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.
>
> *As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.* Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational

7

trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in Celotex

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrating the absence of a genuine issue of material fact,' the nonmoving party

then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby). Moreover, the Court of Appeals explained that

> The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'

Street, 886 F.2d at 1480 (cites omitted). See also Hutt v. Gibson Fiber Glass Products, No. 89-5731 (6th Cir. filed September 19, 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." quoting Liberty Lobby)).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is 'genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party</u>.
>
> * * *
>
> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil

9

> case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- `whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed</u>.'

<u>Liberty Lobby</u>, 477 U.S. at 248, 252, 106 S. Ct. 2505, 91 L.Ed.2d at 211-212, 214 (citation omitted and emphasis added).

It is likewise true that:

> [I]n ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: `The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

<u>Bohn Aluminum & Brass Corp. v. Storm King Corp.</u>, 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." <u>Duchon v. Cajon Company</u>, 791 F.2d. 43, 46 (6th Cir. 1986) <u>app.</u> 840 F.2d 16 (6th Cir. 1988) (unpublished opinion) (citation omitted).

The Court of Appeals further explained the District Court's role in evaluating the proof on a summary judgment motion

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party

10

sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." <u>Webster's Third New InterNational Dictionary</u> (1986).

  Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

<u>InterRoyal Corp. v. Sponseller</u>, 889 F.2d 108, 111 (6th Cir. 1989) <u>cert. denied</u> 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). Here, the parties have given some references to the proof upon which they rely. Local Rule 8(b)(7)(A) and (C) require a showing of undisputed and disputed facts.

In <u>Street</u>, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions

  1. Complex cases are not necessarily inappropriate for summary judgment.

  2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

  3. The movant must meet the initial burden of showing `the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

  4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

  5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: `whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'

  6. As on federal directed verdict motions, the `scintilla rule' applies, <u>i.e.</u>, the respondent must adduce more than a scintilla of evidence to overcome the motion.

11

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must `present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the `old era' in evaluating the respondent's evidence. The respondent must `do more than simply show that there is some metaphysical doubt as to the material facts.' Further, `[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is `implausible.

Street, 886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

The elements of an age discrimination claim were stated by the Sixth Circuit in Wilkins v. Eaton Corp., 790 F.2d 515 (6th Cir. 1986) as follows:

> To make out a prima facie case of age discrimination, thereby avoiding a directed verdict as the close of plaintiff's evidence, a plaintiff must demonstrate: (1) that he was a member of a protected class; (2) he was discharged; (3) he was qualified for the position; and (4) he was replaced by a younger person.

12

Id. at 520 (citation omitted and emphasis added).

Although these elements track the elements of a Title VII claim under of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) et seq., in Merkel v. Scovill, Inc., 787 F.2d 174 (6th Cir. 1986), the Sixth Circuit declined to a wooden application of the tripartite evidentiary model to ADEA claims:

> We have repeatedly held that in an age discrimination action under the federal statute, the ultimate issue is whether age was a determining factor in the discharge of the complaining employees [citation omitted]. We rejected long ago attempts to mechanically apply to ADEA proceedings the evidentiary standards enumerated in [McDonnel Douglas] and indicated that such actions are to be reviewed on a "case by case basis."

Id. at 177. (emphasis added). In Merkel, the Court identified the critical issue as "whether age was a determining factor in the discharge." Id.

As applied here, Dickert is an older worker within the protected group of the ADEA. Plaintiff suffered an adverse employment actions in her demotion and termination. As to Dickert's demotion, her performance issues undisputedly involved monthly data entry mistakes. In the view of Ansei's managers, Dickert failed to perform her auditing duties adequately, given that Uemura had to assume some of her duties. Key, a younger worker assumed Dickert's accounting duties, but for only a week. Key was not replaced. During this time period, Dickert was treated favorably as reflected in her absence without permission from January 10 to January 18, 2004. Ansei terminated other employees for such conduct. The Court concludes that under this undisputed facts, a reasonable trier of fact could not find that Dickert's demotion was motivated by her age.

As to her termination, Dickert had a younger employee who engaged in spreading false rumors and/or disclosing confidential information and who was also fired. Ansei has articulated

13

legitimate, non-discriminatory reasons for its termination of Dickert. Dickert has not shown these stated reasons to be pretext for intentional age discrimination.

Under the ADEA Dickert must show: "'(1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate her discharge; or (3) that they were insufficient to motivate discharge.'" Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1084 (6th Cir. 1994) (quoting McNabola v. Chicago Transit Auth., 10 F.3d 501, 513 (7th Cir. 1993)). After a motion for summary judgment is filed, "[p]laintiff cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Barnhart v. Pickrel, Schaeffer & Ebeling Co., 12 F.3d 1382, 1389 (6th Cir. 1993).

In sum, Dickert cites Ansei managers two age-related comments to her, that she was an "old fuddy-duddy." and in another instance in September 2003, when she asserts Uemura told her "you're old". (Docket Entry No. 22, Exhibit 3-A, Dickert Deposition at pp. 130-31). Dickert cites these remarks as evidence that the January, 2004 decision to demote her was based on her age. Dickert also notes that Defendant's non-compliance with the multiple step disciplinary procedure in its employee handbook.

"[I]solated and ambiguous comments are too abstract, in addition to being irrelevant and prejudicial, to support a finding of age discrimination." Phelps v. Yale Security, Inc., 986 F.2d 1020, 1025 (6th Cir. 1993) (quoting Gagne v. Northwestern Natl. Ins. Co., 881 F.2d 309, 314 (6th Cir. 1989). Moreover, Ishii who fired Dickert also hired Dickert, and less than two years later was involved in the decision to demote and to terminate her. Such facts give support a finding that age discrimination did not motivate those adverse employment decisions. See Buhrmaster v.

Overnite Transp. Co., 61 F.3d 461, 463 (6th Cir. 1995) (within a reasonable time period, "[w]hen the individual who hires a person is the same person who fires an employee, there is a strong inference that discrimination did not motivate the employment decision"). It is undisputed that the employees' handbook provides that disclosure of confidential company information is ground for immediate termination. The Defendant's conduct in this regard is consistent with its policy and does not give rise to an inference of improper motive. See Stumpf v. Cincinnati, Inc., 863 F.Supp. 592, 596 (S.D. Ohio 1994).

As to her retaliation claim, Plaintiff admitted that she never complained to management that her demotion or removal of some purchasing responsibility was the product of age discrimination. (Docket Entry No. 22, Exhibit 3-A, Dickert Deposition at p. 140). This admission precludes any finding of retaliation. See Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1313 (6th Cir. 1989).

For these reasons, the Court concludes that the Defendant's motion for summary should be granted.

An appropriate Order is filed herewith.

**ENTERED** this the ___19th___ day of October, 2005.

WILLIAM J. HAYNES, JR.
United States District Judge